UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROCKY THOMAS TRAVERSIE, <br><br> Plaintiff, <br><br> vs. <br><br> MATTHEW STARR, MATTHEW HANISCH, and DAVE DUNTEMAN, <br><br> Defendants. | 4:16-CV-04142-KES <br><br><br> ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Plaintiff, Rocky Thomas Traversie, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 arguing that defendants used excessive force to detain him. Docket 1. Defendants moved for summary judgment and asked the court to stay discovery. Docket 31. The court granted the motion to stay discovery pending resolution of qualified immunity. Docket 38. For the following reasons, the court grants defendants' motion for summary judgment based on qualified immunity.

**FACTUAL BACKGROUND[1]**

On February 5, 2014, shortly after 7:00 am, Matthew Starr and Matthew Hanisch were dispatched to 3205 North Lewis Avenue in Sioux Falls,

---

[1] Because defendants move for summary judgment, the court recites the facts in the light most favorable to Traversie. Where relevant facts are disputed, both parties' averments are included.

South Dakota. Starr was advised that a female had called 911 claiming to be held hostage. Docket 35 ¶ 1.[2] Starr was advised that the suspect, Traversie, had been accused of holding his family, two adult women and some children, hostage for approximately a day and a half and had been awake for approximately four days on a methamphetamine high. *Id.* ¶¶ 2-3. Starr and Hanisch were advised that one of the adult females had reportedly been assaulted by Traversie with a brick. *Id.* ¶ 4. En route, Starr was informed that Dave Dunteman would also respond to the call. *Id.* ¶ 5.

Starr and Hanisch approached the apartment together, and a woman told them that Traversie had left the scene. *Id.* Starr searched the apartment to confirm that Traversie left. *Id.* ¶¶ 6-7. Then Dunteman told Hanisch and Starr that a vehicle matching the description of the vehicle Traversie used to leave the apartment had just pulled up outside. *Id.* ¶ 8. Starr and Hanisch went outside and saw Traversie get out of the vehicle and walk toward Starr. *Id.* ¶ 9.

Starr calmly told Traversie he was not under arrest but would be detained while police investigated. *Id.* ¶ 10; Docket 34-1(A)[3] at 07:21:00. Then Traversie suddenly and unexpectedly struck Starr in the head with his fist.

---

[2] The Affidavit of Dave Dunteman is missing page 2. Docket 33. To the extent that Defendants' Statement of Material Facts cites to the Affidavit of Dave Dunteman ¶¶4-11, the court does not review or rely upon the citations.

[3] Exhibit 1 is a DVD containing two files: 131604 and 132107. File 131604 is the video from Starr's patrol car and audio from Starr's microphone. The court will refer to file 131604 as Docket 34-1(A). File 132107 is the video and audio from Dunteman's patrol car. The court will refer to file 132107 as Docket 34-1(B).

Docket 35 ¶ 11. Traversie claims Starr struck Traversie first with his baton. *See* Docket 40 at 8; *see also,* Docket 48 ¶ 2. But the side view video footage from Officer Dunteman's dash camera shows Traversie striking Officer Starr in the head first. *Id.* ¶ 12; Docket 34-1(B) at 07:21:28. Even in Traversie's version of events, he concedes that he struck Starr. Docket 40 at 8.

Traversie danced up and down saying something like "let's go, come on," to Dunteman and Hanisch. Docket 35 ¶ 13; Docket 34-1(B) at 07:21:28. Then Traversie knocked Starr to the ground and got on top of Starr and repeatedly assaulted him. Docket 34-1(B) at 07:21:37. Dunteman tried to grab Traversie, but Traversie hit Dunteman in the head and knocked him to the ground. Docket 35 ¶ 15. When Dunteman hit the ground, he yelled out, indicating his arm was in severe pain. *Id.* ¶ 15. Starr regained consciousness and saw Dunteman lying on the ground yelling out in pain. *Id.* ¶ 16. According to Traversie, he only used his hands to defend himself. Docket 40 at 9.

Hanisch engaged Traversie while Starr and Dunteman were lying on the ground. *Id.* ¶ 17; Docket 34-1(B) at 07:21:41. Hanisch used pepper spray toward Traversie's face and Traversie charged toward Hanisch. Docket 35 ¶17; Docket 34-1(B) at 07:21:47. Traversie repeatedly punched Hanisch. Docket 35 ¶ 18. Traversie hit Hanisch in the eye and knocked his glasses off, limiting his vision. *Id.* When Traversie hit Hanisch's left eye, Hanisch was immediately blinded in that eye. *Id.* Hanisch fell to the ground and Traversie got on top of Hanisch and proceeded to punch Hanisch repeatedly while Hanisch struck Traversie with his baton. *Id.;* Docket 34-1(B) at 07:21:48. Traversie had

3

opportunities to flee the area, but Traversie stayed and continued to fight defendants. Docket 35 ¶ 22; *see also* Docket 48 at 1.

Starr and Dunteman got up and assisted Hanisch. Docket 34-1(B) at 07:21:52. Dunteman used his baton making "a 12 to 6 motion" to strike or attempt to strike Traversie's head while Traversie walked backwards. Docket 48 at 3*; see also* Docket 34-1(B) at 07:21:31. Dunteman drew his service weapon and gave Traversie verbal instructions. Docket 34-1(B) at 07:22:20. Traversie continued to resist arrest, fight defendants, and ignore instructions. Docket 35 ¶ 19; Docket 34-1(B) at 07:22:09. Defendants drove Traversie to the ground. Docket 48 at 3. Once Traversie was on the ground, Traversie continued to ignore defendants' instructions to put his hands behind his back and defendants still had not restrained Traversie. Docket 34-1(B) at 7:22:20. According to Traversie, Dunteman kicked Traversie while Hanisch hit Traversie with his baton. Docket 48 at 4. Hanisch struck Traversie's head thirteen times with his baton. *Id.* at 2. Starr hit Traversie twice. *Id.*

Traversie then stopped attacking defendants and defendants stopped using force against Traversie. Docket 34-1(B) at 07:22:50-07:27:23. Instead, defendants gave repeated commands to Traversie but Traversie ignored the commands. Docket 34-1(A) at 07:23:29-07:24:35. Defendants instructed Traversie to get on the ground, but Traversie did not while shouting profanities at defendants. Docket 35 ¶ 23.

Several additional police officers arrived and instructed Traversie to get on the ground. Docket 34-1(B) at 07:27:24. Traversie refused to comply and

4

swung at an officer. *Id.* Other officers moved in and took Traversie to the ground. *Id.* Traversie continued to resist arrest while officers apprehended him. Docket 35 ¶24. Later Starr stated, "I was the first to hit [Traversie]." Docket 48 at 2; Docket 34-1(B) at 07:31:50.

Starr sustained injuries and received treatment at the Sanford Hospital emergency room. Docket 35 ¶ 25. Starr's injuries included swelling to his face and jaw, severe headache, ringing in his ears, lacerations to his right elbow, scratches on his arms, swelling to his left hand, injured lower back and injured buttocks. *Id.* Emergency room staff cut off Starr's wedding ring due to swelling. *Id.* Starr was required to miss several days of work due to his injuries. *Id.* Hanisch sustained two separate orbital fractures that required surgery to correct. *Id.* ¶ 18.

Traversie sustained a head wound that required nine staples, a broken left hand, and swelling in both hands. Docket 48 at 4. He also alleges that he sustained mental and emotional injury. *Id.* at 5.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he

5

nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (citation omitted and quotation marks).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

**DISCUSSION**

I.  **Trial Transcripts**

Traversie offers parts of his criminal trial transcript to dispute defendants' statement of material facts. Docket 40-3. Defendants argue these statements are inadmissible hearsay under Federal Rule of Evidence 801 and

cite *Brooks v. Tri-Systems, Inc.*, which holds that inadmissible evidence cannot be used to defeat summary judgment. 425 F.3d 1109, 1111 (8th Cir. 2005). Federal Rule of Evidence 804 is an exception to the rule against hearsay and permits the use of former testimony when a declarant is unavailable as a witness. Fed. R. Evid. 804(b). Here, Traversie has not made the requisite showing that Diana and Tanya are unavailable under Federal Rule of Evidence 804(a) and the other declarants are available. Also the partial transcript Traversie provided does not indicate when it was prepared, who prepared it, or a certificate from the preparer. Thus, the transcript is an inadmissible excerpt from uncertified state court criminal trial transcripts and does not constitute admissible evidence that the court can consider in ruling on defendants' motion.

Even if the court considered the transcripts, the transcripts would not change the ultimate outcome of this case. Traversie identifies several sections that he claims create factual disputes. But Traversie cannot defeat summary judgment by merely alleging inconsistencies that have no bearing on the material issues in his excessive force claim.

## II. Official Capacity Claims

Traversie has sued all defendants in their official and individual capacities. Docket 1. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). A municipality may not be held

7

liable solely on the basis that a constitutional violation was committed by one of its employees. *Monell*, 436 U.S. at 693–94. "[I]n an official-capacity suit the [municipality's] 'policy or custom' must have played a part in the violation of federal law." *Kentucky*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 694). To survive a motion for summary judgment for a claim made against a municipality, a plaintiff must show some evidence that the claimed constitutional violation is more than a one-time occurrence, i.e. that the action was taken in accordance with a policy or custom or that the city failed to create a policy or custom despite a pattern of similar constitutional violations making additional policies necessary. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392–93 (8th Cir. 2007).

Traversie argues that the Sioux Falls Police Department's unconstitutional policy was a "moving force" behind the alleged Fourth Amendment violation. Docket 40 at 6. Traversie asserts that the use of deadly force policy, Policy: Response to Resistance General Guidelines / Options - Deadly Force, section 4.6.3.2 (4.6.3.2), is unconstitutional. Section 4.6.3.2 states that force may be used "[t]o prevent the escape of an individual in cases where the officer has probable cause to believe that the subject has committed a violent felony involving the infliction or threatened infliction of serious bodily harm or death <u>AND</u> by the subject's escape they pose an imminent threat of serious bodily harm or death to another." Docket 40-2 at 6.

Traversie cites *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), to show that the Sioux Falls Police Department's use of force policy is unconstitutional.

8

Docket 40 at 6. Traversie claims that section 4.6.3.2 is the same as the unconstitutional policy in *Garner.* Docket 40 at 6. Both policies apply when the police are attempting to prevent the escape of a suspect, but the policies are clearly not the same. Section 4.6.3.2 requires that the officers have both probable cause that the suspect committed a violent felony involving the infliction or the threatened infliction of harm or death and that the subject's escape poses an imminent threat of serious bodily harm or death to another. Docket 40-2. The policy in *Garner* lacked both of these additional requirements. The statute in *Garner* provided that "[i]f, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest." *Garner*, 471 U.S. at 4. Thus, summary judgment is entered in favor of all defendants on the official capacity claims.

### III. Individual Capacity Claims

Defendants contend that they are entitled to qualified immunity on the individual capacity claims. Section 1983 provides a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983. The doctrine of qualified immunity, however, shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d

9

541, 545 (8th Cir. 2014) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two factors in either order. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). But "[t]o deny the officers qualified immunity, [the court] must resolve both questions in [the plaintiff's] favor." *Hawkins v. Gage Cty.*, 759 F.3d 951, 956 (8th Cir. 2014).

Traversie claims defendants violated his constitutional right by using excessive force when they tried to detain him. "In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Eighth Circuit Court of Appeals has recognized three different scenarios in which an excessive force claim may arise, differentiating by looking at when in the criminal process the force was used. Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Id.* at 395.

The test for qualified immunity is whether the amount of force used was objectively reasonable under the particular facts and circumstances of the case. The reasonableness of the amount of force used must be judged from the perspective of a reasonable officer at the scene rather than by the 20/20 vision of hindsight. *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013); *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396); *see also Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002).

The nature and quality of the intrusion on the individual's Fourth Amendment rights must be balanced against the government's countervailing interests. *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012). The court looks to the specific circumstances, such as the severity of the offense at issue, whether the suspect poses an immediate safety threat, and whether the suspect is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396; *Small*, 708 F.3d at 1005; *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010). The degree of injury suffered is also relevant in that it shows how much force was used. *Montoya*, 669 F.3d at 871. Force is least justified against non-violent misdemeanants who are not fleeing, actively resisting, and pose little or no threat to officer or public safety. *Id.*

### A. Starr

Starr argues that the force he used against Traversie was objectively reasonable. Docket 36 at 6. The undisputed facts show that dispatch informed Starr that Traversie was accused of holding his family hostage while high on

11

methamphetamines and assaulting a family member with a brick.[4] Docket 35 ¶¶ 1-4. At the first interaction with Traversie, Dunteman's dash camera video shows Starr calmly telling Traversie that he would be detained while police investigated, but Traversie proceeded to suddenly strike Starr. *Id.* ¶ 11. Starr only used force after Traversie had struck him and attacked Hanisch and Dunteman. *Id.* ¶¶ 14-19. Traversie continued to ignore verbal instructions and actively resist arrest. *Id.* ¶¶ 20-22.

Traversie argues that Starr struck him first and that he used only a single punch to defend himself from the defendants' use of batons. Docket 40 at 8, 12. But Dunteman's dash camera video shows Traversie striking Starr first and delivering multiple blows to the defendants. *See* Docket 34-1(B) at 07:21:28, 07:21:37, 07:21:41, 07:21:48; *see also* Docket 35 ¶¶ 15, 17, 18. Traversie also argues that defendants continued using their batons after Traversie was on the ground. Docket 40 at 10. Officer Dunteman's dash camera shows that defendants' baton strikes continued when Traversie got on the ground. *See* Docket 34-1(B) at 07:22:09 – 07:22:50. Defendants do not dispute this fact but argue,

> Plaintiff continued to attack officers throughout the entire altercation. Just when the officers thought Plaintiff had given up and relented, he resumed his attack. (Stmt. of Facts, at ¶¶ 20-21.) During the initial altercation with Officers Starr, Dunteman, and Hanisch, Plaintiff temporarily relented in his attack on police. However, prior to police using any force, and when the officers gave

---

[4] Traversie disputes the truthfulness of the allegation that Traversie was holding hostages and assaulted anyone with a brick. Docket 40 at 2. But this does not refute that this was the information Starr received prior to arriving on the scene.

12

> Plaintiff verbal instructions to get on the ground, Plaintiff again
> began attacking officers. (*Id.*)

Docket 36 at 9. Once Traversie was on the ground, Traversie continued to ignore defendants' instructions to put his hands behind his back and defendants still had not restrained him. Docket 34-1(B) at 7:22:20. Officers still faced a threat of serious physical injury when Traversie was on the ground.

Traversie's physical resistance to the attempt to detain him quickly escalated into a more serious crime of assault on officers. After Traversie struck Starr, Starr had objectively reasonable concerns about whether Traversie posed an immediate threat to the safety of officers and others. Viewing Starr's conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, his actions were objectively reasonable in light of the facts and circumstances that confronted him.

### B. Hanisch

Hanisch argues that the force he used against Traversie was objectively reasonable. Docket 36 at 10. The undisputed facts show that dispatch informed Hanisch that Traversie assaulted a woman with a brick before arriving on the scene. Docket 35 ¶ 4. Hanisch only resorted to use of force after Traversie had punched Starr and Dunteman. *See* Docket 34-1(B) at 07:21:28, 07:21:37, 07:21:41; *see also* Docket 35 ¶ 15. First, Hanisch used pepper spray against Traversie, but this did not stop Traversie. Docket 35 ¶ 17; Docket 34-1(B) at 07:21:47. Second, Hanisch did not use his baton until Traversie was on top of Hanisch and repeatedly punching Hanisch. Docket 35 ¶ 18; Docket 34-

13

1(B) at 07:21:48. Even with these baton strikes, Traversie continued to resist. Docket 35 ¶¶ 20, 23.

Traversie's allegations against Hanisch overlap with the allegations against Starr and Dunteman. Traversie argues that defendants continued using their batons after Traversie was on the ground. Docket 40 at 10. But as explained above, once Traversie was on the ground, Traversie continued to ignore defendants' instructions to put his hands behind his back and defendants still had not restrained Traversie. Docket 34-1(B) at 7:22:20. Officers continued to face a threat of serious physical injury when Traversie was on the ground.

Traversie's physical resistance to the attempt to detain him posed an immediate threat to the safety of the officers when Hanisch used force. Viewing Hanisch's conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, his actions were objectively reasonable in light of the facts and circumstances that confronted him.

### C. Dunteman

Dunteman argues that the force he used against Traversie was objectively reasonable. Docket 36 at 11-12. Dunteman's use of force included attempting to grab Traversie after Traversie struck Starr, striking or attempting to strike Traversie while Traversie walked backwards, drawing his service weapon while instructing Traversie to get down, and kicking Traversie while Traversie was lying on the ground. Docket 35 ¶ 15; Docket 34-1(B) at 7:21:31;

14

Docket 48 at 3-4. Every use of force by Dunteman occurred after Traversie struck Starr.

Traversie's allegations against Dunteman overlap with the allegations against Starr and Hanisch. When Traversie goes to the ground, Traversie argues Dunteman's kick was excessive because "his hands [were] up [and] palms [were] open before going to the ground." *Id.* at 3. But Traversie continued to ignore defendants' instructions to put his hands behind his back and defendants still had not restrained Traversie. Docket 34-1(B) at 7:22:20. Officers continued to face a threat of serious physical injury when Traversie was on the ground. Viewing Dunteman's conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, his actions were objectively reasonable in light of the facts and circumstances that confronted him.

### D. Defendants Used Reasonable Force

Traversie actively and violently resisted arrest. It is clear under Eighth Circuit case law that when an arrestee resists, some use of force by the police is reasonable. *See Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994) (finding a severed tendon in a finger resulted from the arrestee's own actions in resisting arrest); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017). Determinations of the amount of force necessary to effectuate an arrest require split-second judgments when, as in cases such as this, the situation is rapidly evolving. *Graham,* 490 U.S. at 397. Not every push or shove violates the Fourth Amendment. *Id.* at 396.

While the injury in this case was unfortunate, the court cannot say the amount of force used by the officers was unreasonable under the circumstances. Based on the facts viewed in the light most favorable to Traversie and the careful review of the dash-cam videos, the court finds the amount of force used was not objectively unreasonable. Traversie fails to show a deprivation of his Fourth Amendment rights. As such, defendants in their individual capacity are entitled to qualified immunity on Traversie's claim of excessive force.

### IV.    Motion for Discovery

Traversie filed two motions to compel discovery. Dockets 45 and 49. Traversie's first seeks an order compelling defendants to provide Dunteman's dash cam video and return interrogatories. Docket 45. Traversie's filings show that he has viewed Dunteman's dash cam video rendering the request moot. Docket 48 at 2. Traversie also argues that because his interrogatories were submitted before the court stayed discovery (Docket 38), defendants should be compelled to answer. This court's protection order (Docket 38) stayed defendants' obligation to respond to Traversie's outstanding interrogatories. Thus, Traversie's motion is denied as moot.

Traversie also requested an order under Rule 37(a) of the Federal Rules of Civil Procedure to compel defendants to produce various documents and allow him to examine his own criminal history. Docket 49. This court stayed discovery pending a determination of qualified immunity. Docket 38. Thus, Traversie's motion (Docket 49) is denied as moot.

16

**CONCLUSION**

Traversie fails to set forth facts sufficient to overcome the qualified immunity defense of Matthew Starr, Matthew Hanisch, or Dave Dunteman. Therefore, the motion for summary judgment based on qualified immunity is granted in favor of these defendants. Additionally, defendants are entitled to summary judgment on the official capacity claims because Traversie has not shown that the use of force policy of the City of Sioux Falls violates the United States Constitution.

Thus, it is ORDERED

1. Defendants' motion for summary judgment (Docket 31) is granted. Summary judgment is entered in favor of defendants.

2. Traversie's motions to compel discovery (Dockets 45 & 49) are denied as moot.

DATED January 30, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE